******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TAJAH MCCLAIN
(SC 19532)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued November 10, 2016—officially released March 14, 2017*

*Daniel J. Krisch*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *C. Robert Satti*, *Jr.*, supervisory assistant state's attorney, and *Katherine Donoghue*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The principal issue in this certified appeal is whether an implied waiver of a claim of instructional error pursuant to *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), precludes review of that claim under the plain error doctrine. The defendant, Tajah McClain, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court affirming the judgment of conviction, rendered after a jury trial, of, inter alia, murder with a firearm in violation of General Statutes §§ 53a-54a and 53-202k. See *State* v. *McClain*, 154 Conn. App. 281, 283, 105 A.3d 924 (2014). On appeal, the defendant contends that the Appellate Court improperly determined that a *Kitchens* waiver precluded plain error review of his claim of instructional error because the implied acquiescence of counsel cannot waive an error of such magnitude. Further, the defendant claims that the trial court's failure to instruct the jury on consciousness of guilt resulted in manifest injustice necessitating reversal under the plain error doctrine. Although we agree with the defendant that a *Kitchens* waiver does not necessarily foreclose plain error review of that same claim, we conclude that the trial court's decision not to instruct the jury on consciousness of guilt in the present case was not plain error. Accordingly, we affirm the judgment of the Appellate Court.

The record and the Appellate Court opinion reveal the following facts and procedural history. The state charged the defendant with, inter alia, murder with a firearm in violation of §§ 53a-54a and 53-202k,[2] in connection with the shooting death of Eldwin Barrios.[3] On the first day of his jury trial, "the court provided counsel with a copy of the proposed jury instructions, indicated it received requests to charge from both parties, and stated it would review each accordingly. On the sixth day of trial, the court and counsel discussed the upcoming charge conference and issues relating to the jury instructions. The state reminded the court that it had requested a consciousness of guilt instruction. . . . Defense counsel did not object to the state's arguments, and responded, 'No, Your Honor,' when the court asked if there was anything further from either side relating to the instructions.

"On the next day of trial, the court stated that it would not give the state's requested instruction, provided counsel with a copy of the proposed instructions, and asked if counsel were ready to proceed. Defense counsel did not take exception to the court's decision not to charge on consciousness of guilt.

"During its rebuttal case, the state introduced the [defendant's] uniform arrest report into evidence and elicited testimony related thereto. Defense counsel did not object. The state also elicited testimony that, three

months before the murder, the defendant stated he was living on Wood Avenue in Bridgeport. Defense counsel did not object. After the state rested its rebuttal case, the court held a charge conference on the record. There was no further discussion about the consciousness of guilt instruction, and, when the court asked if there was '[a]nything further on the instructions,' defense counsel responded, 'No, Your Honor.' " (Footnote omitted.) Id., 289–91.

The parties then gave closing arguments, during which the prosecutor argued that a discrepancy between two statements made by the defendant demonstrated his consciousness of guilt. Specifically, the prosecutor contrasted the information that the defendant provided for the uniform arrest report that he was homeless, with a statement that he gave to the police with respect to an unrelated incident, that he had a residential address on Wood Avenue. Defense counsel did not object to this argument. After closing arguments, the court instructed the jury, but did not include an instruction on consciousness of guilt. The court then asked the parties if they had any issues with the charge, and both stated that they did not.

The jury found the defendant guilty of all charges. The trial court then rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of sixty-five years incarceration. Id., 284.

The defendant then appealed from the judgment of conviction claiming, inter alia, that the trial court's failure to instruct on consciousness of guilt was manifestly unjust, and that the judgment of conviction should be reversed under the plain error doctrine. Id., 288–89. In its decision, the Appellate Court relied on *State* v. *Rosado*, 147 Conn. App. 688, 701–704, 83 A.3d 351, cert. denied, 311 Conn. 928, 86 A.3d 1058 (2014), a case in which that court declined to review the defendant's claim of plain error because it determined that defense counsel waived review of the claim under *State* v. *Kitchens*, supra, 299 Conn. 447, by raising no objection, and affirmatively agreeing to, the court's proposal to take the jury's verdict before responding to a jury note requesting a clarifying instruction. See *State* v. *McClain*, supra, 154 Conn. App. 292–93. The court reiterated the statement in *Rosado* that a valid waiver precludes plain error review because, "if there has been a valid waiver, there is no error for us to correct." (Internal quotation marks omitted.) Id., 292. Applying the principles from *Rosado*,[4] the Appellate Court concluded that "the representations of defense counsel reflected acquiescence in the proposed jury instructions" because defense counsel did not raise an objection to the state's request for the consciousness of guilt instruction or to the court's denial of the request, and when asked by the court, represented that he had no concerns about the

charge. Id., 293. Accordingly, the Appellate Court held that the defendant's actions constituted a waiver under *Kitchens*, which precluded plain error review. Id. This certified appeal followed. See footnote 1 of this opinion. Additional relevant facts will be set forth as necessary.

## I

The first issue before us is whether a *Kitchens* waiver forecloses plain error reversal. On appeal, the defendant makes the policy argument that if a fundamental, manifest injustice amounting to plain error exists in a case, it does so regardless of whether counsel remained silent, failed to object, or affirmatively stated that he had no objection to the proposed jury instruction and, as such, a defendant's claim of plain error should not fail on the basis of counsel's implied acquiescence to the instructional error.

In response, the state argues that a *Kitchens* waiver should foreclose relief under the plain error doctrine because a *Kitchens* waiver encompasses an inference that the defendant knowingly and voluntarily relinquished the right in question and, as such, that waiver precludes a claim of plain error. The state then makes the policy argument that permitting appellate review of waived claims under the plain error doctrine would invite an ambuscade of the trial courts, and would encourage sandbagging by counsel at trial. Finally, the state claims that it would be inconsistent with our recent decision in *State* v. *Bellamy*, 323 Conn. 400, 147 A.3d 655 (2016), for us to conclude that a *Kitchens* waiver precludes review of unpreserved constitutional claims under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), but permits appellate review of claims of plain error. We agree with the defendant, and conclude that a *Kitchens* waiver does not preclude appellate relief under the plain error doctrine.

The question of whether a *Kitchens* waiver precludes plain error review is one of law; thus, this court's review is plenary. *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 784, 114 A.3d 925 (2015). To answer this question requires a brief review of our recent waiver jurisprudence. In *Kitchens*, we considered whether a defendant was entitled to appellate review of his claim of instructional error pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40,[5] when defense counsel failed to object or correct the given instruction. *State* v. *Kitchens*, supra, 299 Conn. 462–63. The court reiterated that, with respect to *Golding* and the concept of waiver, "[a] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Internal quotation marks omitted.) Id., 467.

The court then analyzed whether the defendant's claim had been waived under the third prong of *Golding*. Id., 468–73. In its discussion of the waiver doctrine in Connecticut, the court explained that "[w]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law . . . [i]t is enough if he knows of the existence of the claim and of its reasonably possible efficacy." (Internal quotation marks omitted.) Id., 469. Additionally, "Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]." (Internal quotation marks omitted.) Id.

In determining whether counsel could impliedly waive a claim of instructional error for purposes of *Golding*, we considered the presumption of competent counsel, in that an implied waiver may well signify a strategic decision on the part of the attorney. Id., 489–92. Accordingly, we concluded in *Kitchens* that allowing counsel to claim instructional error once waived would result in an ambuscade on the court, which could encourage sandbagging in the future. Id., 470, 480. We then established a framework under which we review claims of waiver of instructional error, holding that: "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." Id., 482–83.[6]

More recently, in *State* v. *Bellamy*, supra, 323 Conn. 403, we reaffirmed the *Kitchens* waiver rule.[7] In *Bellamy*, the defendant claimed that the trial court's instruction on eyewitness identification witnesses was deficient, and that the Appellate Court had incorrectly concluded that he waived his claim of instructional error. Id., 407–409. After determining that the defendant's instructional claim had been impliedly waived, we considered whether to overturn the waiver rule in *Kitchens*. Id., 410, 414. By a narrow margin, we declined to do so. Id., 416, 423, 439. We began our discussion "by noting that this court adopted the waiver rule in *Kitchens* in order to clarify the law and to encourage the formation of accurate jury instructions consistent

with the principles of fundamental fairness and the finality of judgments." Id., 416. We held that the implied waiver rule set forth in *Kitchens* was fair "because it is based on the presumption that counsel was aware of, and rejected *as a matter of trial strategy*, every conceivable challenge to the jury instructions." (Emphasis added.) Id., 417. We further reaffirmed the four policy grounds upon which the court in *Kitchens* relied, including "(1) the presumption that counsel is competent, (2) the rules of practice that provide for counsel's participation in the crafting of instructions, (3) the rules of fairness that place responsibility with the trial court and counsel to ensure that the instructions are correct, and (4) the existence of habeas review as a potential safety net." Id., 423.

We note that it is undisputed that defense counsel's actions in the present case constituted a *Kitchens* waiver. See *State* v. *McClain*, supra, 154 Conn. App. 289–93. Nevertheless, the nature of the plain error doctrine illustrates why a *Kitchens* waiver does not preclude plain error review. "An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application." (Internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 596, 134 A.3d 560 (2016). "[T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009). "[I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . [Previously], we described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice."[8] (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Jamison*, supra, 596–97.

It is axiomatic that, "[t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although

either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy." (Internal quotation marks omitted.) *State* v. *Ruocco*, 322 Conn. 796, 803, 144 A.3d 354 (2016). Put another way, plain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal. See id. (failure to give statutorily mandated instruction is plain error); see also, e.g., *Mueller* v. *Tepler*, 312 Conn. 631, 645–46, 95 A.3d 1011 (2014) (plain error for Appellate Court to affirm judgment of trial court granting motion to strike on alternative ground rather than remanding to afford party opportunity to amend pleading); *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 522–25, 911 A.2d 712 (2006) (failure of trial judge to remove himself from presiding over defendant's habeas petition plain error when judge had represented defendant at his guilty plea); *Belcher* v. *State*, 99 Conn. App. 353, 354–58, 913 A.2d 1117 (2007) (judge's failure to disqualify himself based on his appearance as counsel on brief filed on behalf of defendant on direct appeal was plain error); *State* v. *Cotton*, 69 Conn. App. 505, 506, 794 A.2d 1116 (2002) (complete failure to instruct jury as to meaning of term "drug dependency" is plain error); *State* v. *Hair*, 68 Conn. App. 695, 706, 792 A.2d 179 (plain error for court to instruct jury on offense with which defendant was not charged and then accept jury's guilty verdict for offense on which jury had not been instructed), cert. denied, 260 Conn. 925, 797 A.2d 522 (2002); *State* v. *Thornton*, 55 Conn. App. 28, 33–34, 739 A.2d 271 (1999) (plain error to require defendant to pay money into fund for future treatment or counseling of victim, as special condition of probation).

In contrast, however, *Golding* review is a rule of reviewability, focused not on the magnitude of the error, but rather, on the type of error alleged, with the ultimate goal of determining whether the court may review such error.[9] *State* v. *Golding*, supra, 213 Conn. 239–40 (review of unpreserved claim only when "the claim is of constitutional magnitude alleging the violation of a fundamental right"). Reversal is secondary upon the demonstrating of a harmful error. Additionally, the presumption of competent counsel upon which the waiver rule in *Kitchens* relies is inapplicable to plain error review—there simply is no reason why competent counsel would *intentionally* relinquish the right to review an error dire enough to be contemplated by the plain error rule. Thus, the policy behind the waiver rule in *Kitchens* is inapposite in the context of claims of plain error and, as such, a *Kitchens* waiver does not foreclose claims of plain error. Accordingly, the Appellate Court improperly held that a *Kitchens* waiver foreclosed review of a plain error claim.[10]

II

We next consider whether the trial court's decision not to give a consciousness of guilt instruction in the present case constitutes plain error requiring reversal.[11] The defendant contends that it was plain error for the trial court not to instruct the jury on consciousness of guilt, when there was a factual basis for applicability of that doctrine. The defendant argues that, because the state offered evidence on consciousness of guilt and argued that concept to the jury to discredit the defendant's sole defense of alibi, the jury needed instruction on the doctrine in order to apply it to the facts of the case. Relying on the complexities of the doctrine of consciousness of guilt, the defendant claims that without the instruction, the jury heard an incomplete and inaccurate discussion of the doctrine. Finally, the defendant contends that there is no assurance that the trial court's error was harmless in light of the weakness of the state's case.

In response, the state relies on Appellate Court authority holding that a claim of error in a consciousness of guilt instruction does not warrant plain error review. See, e.g., *State* v. *Houle*, 105 Conn. App. 813, 821, 940 A.2d 836 (2008). It contends, in the alternative, that even if the failure to give a consciousness of guilt instruction warrants plain error review, such failure is not so clear and obvious an error as to be beyond debate because, in most cases, it is the defendant who would *benefit* from a court's failure to give such an instruction, as the instruction typically emphasizes a defendant's false statements to the police. Further, the state claims that the defendant has not demonstrated that the failure to give the instruction constituted a manifest injustice requiring plain error reversal because he failed to explain why the alleged error constituted a "truly extraordinary" situation, given that the only reference to the consciousness of guilt doctrine was a single comment in the prosecutor's closing argument, to which the defendant did not object. See *State* v. *Myers*, supra, 290 Conn. 289. Finally, relying on this court's decision in *State* v. *Payne*, 303 Conn. 538, 565–66, 34 A.3d 370 (2012), the state argues that if the situation in *Payne*— in which a prosecutor suggested consciousness of guilt in violation of an order from the court—did not require reversal, then certainly, the present facts before us do not require plain error reversal. We agree with the state.

We turn to the first prong of the plain error doctrine, namely, whether the trial court's decision not to give a consciousness of guilt instruction, is so clear an error that a failure to reverse the judgment would result in manifest injustice. See, e.g., *State* v. *Jamison*, supra, 320 Conn. 596–97. The record reveals the following additional relevant facts. On the sixth day of trial, the trial court asked both parties if they had any issues relating to the jury instructions. See *State* v. *McClain*, supra, 154 Conn. App. 289. The state indicated to the

court that its request for a consciousness of guilt instruction was based on the following: (1) the uniform arrest report, which indicated that the defendant had stated to police shortly after the murder that he was homeless; (2) testimony from a police officer, Detective Keith Bryant, indicating that the defendant had informed police that he was living on Wood Avenue approximately three months before the murder; and (3) the testimony of the defendant's alibi witness, his sister, stating that the defendant lived with her at 430 Ogden Street in Bridgeport for six months prior to, and on the night of, the murder. Id., 289–90.

On the following day of trial, the trial court held a charge conference on the record. Id., 290. After considering the state's request for a consciousness of guilt instruction, the trial court declined to give the instruction, stating that, it understood the state's argument to be that the information provided in the uniform arrest report was false, but the court believed that information was not information necessarily related to the events under investigation. As such, because the allegedly false information was subject to interpretation, the court declined to give an instruction describing such interpretations. The defendant did not object.

During the state's rebuttal case, it introduced into evidence the defendant's uniform arrest report, in which the defendant had stated that he was homeless when he was arrested three days after the murder. Id. The state also called Detective Bryant, who testified that the defendant told him on March 4, 2010, just three months prior to the murder, that he lived on Wood Avenue. Id. After the close of evidence, the trial court held another charge conference on the record. Id. The trial court reviewed with the parties the changes it had made to the instructions, which did not include the state's requested consciousness of guilt instruction. Id. The defendant did not raise any concerns about the need for an instruction on consciousness of guilt. Id., 290–91. At the end of the charge conference, both parties stated that they had no further concerns with the instructions. Id.

During closing arguments, with respect to consciousness of guilt, the state argued the following: "The defendant is arrested for a crime, and you'll see [in] the [uniform arrest report] that you have, what he was arrested for; it was a murder. And at the time that he's arrested, he tells the police that he was homeless. Now, why would he tell the police he was homeless; you have a right to consider that. Can you use that as circumstantial evidence of a consciousness of guilt. Think about it. If I tell them I'm living at 430 Ogden Street, they're gonna be able to go over and find out the truth in this case. If you're thinking about this yourself; just yourself thinking about things. [The defendant] gets shot at on [March 4, 2010] . . . [a]nd he says, I live [on] Wood

Avenue . . . . What's the import of that; well, [the defendant's sister said] that the defendant lived at [430] Ogden Street." After closing arguments, the trial court instructed the jury on the applicable law, but did not include an instruction on consciousness of guilt. *State* v. *McClain*, supra, 154 Conn. App. 291. The court then asked the parties whether they had any issues with the charge, and both stated that they did not. Id.

The defendant's claim asserts, somewhat paradoxically, that he suffered manifest injustice because the trial court omitted an instruction that ordinarily is sought by the state and opposed by the defendant. A consciousness of guilt instruction is intended to draw the jury's attention to indirect evidence of the defendant's guilt, including, for example, false statements made to the police.[12] See Connecticut Criminal Jury Instructions (4th Ed. 2008) § 2.6-3, available at http:// www.jud.ct.gov/ji/criminal/Criminal.pdf (last visited March 1, 2017) (pattern instruction). The instruction then permits the jury to infer from the evidence that the defendant was acting from a guilty conscience. Id. Tellingly, the pattern jury instruction on consciousness of guilt states in part that: "In any criminal trial it is permissible for the state to show that conduct or statements made by a defendant after the time of the alleged offense may have been influenced by the criminal act; that is, the conduct or statements show a consciousness of guilt. . . . The state claims that the following conduct is evidence of consciousness of guilt . . . ." (Footnotes omitted.) Id. Thus, the pattern instruction anticipates the *state*, not a defendant, pursuing a consciousness of guilt instruction.

Contrary to the defendant's position that the trial court's decision not to instruct on consciousness of guilt was manifestly unjust, in challenging a trial court's consciousness of guilt instruction, defendants often contend that the instruction is improper because it improperly shifts the burden of proof from the state to the defendant; *State* v. *Banks*, 194 Conn. 617, 622, 484 A.2d 444 (1984); and inserts the court's imprimatur on the state's version of the events. *State* v. *Johnson*, 288 Conn. 236, 285, 951 A.2d 1257 (2008). As such, defendants typically object to a consciousness of guilt instruction because the instruction is detrimental to their credibility and, ultimately, to their case.

Additionally, "[t]he decision to give a consciousness of guilt instruction is left to the sound discretion of the trial court." *State* v. *Hinds*, 86 Conn. App. 557, 565, 861 A.2d 1219 (2004), cert. denied, 273 Conn. 915, 871 A.2d 372 (2005); see also, e.g., *State* v. *Banks*, supra, 194 Conn. 622. Although we cannot foreclose the possibility that a trial court's failure to exercise its discretion to give a requested, but not required, instruction could rise to the level of plain error, we observe that the fact that the decision is discretionary makes that eventuality

less likely.[13] Given the typicality of the state pursuing a consciousness of guilt instruction and the potential benefits to the defendant from the trial court's decision not to give the instruction, the trial court's decision in the present case is not so clearly and obviously an error that it undermines the integrity and fairness of the judicial proceeding necessitating reversal.[14] Accordingly, we conclude that the trial court's decision not to provide the instruction on consciousness of guilt, requested by the state, was not plain error requiring reversal.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] We initially granted the defendant's petition for certification to appeal limited to the following question: "Did the Appellate Court properly determine that an implied waiver of a claim of instructional error that satisfies *State* v. *Kitchens*, [supra, 299 Conn. 447], also forecloses plain error review?" *State* v. *McClain*, 319 Conn. 902, 122 A.3d 637 (2015). We subsequently granted the defendant's motion to add the following certified question: "If the answer to [the first question is] 'no,' was the trial court's failure to instruct the jury on consciousness of guilt plain error requiring reversal of the judgment?"

We note that the Appellate Court did not reach the merits of this issue, however, because it affirmed the judgment of the trial court on the ground that an implied waiver of a claim of instructional error under *Kitchens* also forecloses plain error review. We granted the defendant's motion to modify the certified question in the interest of judicial economy in order to avoid an unnecessary remand of a single issue appeal to the Appellate Court.

[2] The state also charged the defendant with assault in the first degree with a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53-202k, and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). See *State* v. *McClain*, supra, 154 Conn. App. 283.

[3] For a detailed recitation of the facts underlying this murder charge, see *State* v. *McClain*, supra, 154 Conn. App. 283–84.

[4] The defendant's appeal from the trial court's judgment of conviction was originally filed in this court. *State* v. *McClain*, supra, 154 Conn. App. 292 n.4. Following an order of this court transferring the case to the Appellate Court pursuant to Practice Book § 65-1, the defendant filed a motion requesting that the Appellate Court hear that appeal en banc "because the court would need to overrule *Rosado* [in order to] reverse the judgment for plain error." Id. We note that the Appellate Court denied that request. Id.

[5] Under *Golding*, it is well settled that a defendant may prevail on an unpreserved claim when: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*).

[6] In adopting the standard set forth in *Kitchens*, we relied on, inter alia, "the widely recognized presumption that counsel is competent and capable of acting on behalf of the defendant in matters concerning trial management, including waiver of the defendant's right to challenge a jury instruction . . . ." *State* v. *Kitchens*, supra, 299 Conn. 486–88. To that end, we concluded "first, that trial courts *expect* significant participation by counsel in formulating jury instructions because there would be no reason for our rules to provide such guidance if little or no participation was anticipated. We also conclude[d] that competent counsel, being cognizant of our rules, is aware that there are multiple opportunities to request specific instructions, that exceptions or objections to the instructions proposed or given may be taken or raised at various times, and that a charge conference may be requested to consider the instructions and any changes or modifications thereto that counsel deems necessary to ensure that they are correct. Accordingly, reviewing courts in Connecticut have good reason to conclude that counsel knowingly and intentionally waived the right to challenge a jury instruction

when the trial court has provided the parties with a meaningful opportunity to review and discuss the instructions, to request changes or modifications before and after the instructions are given, and to comment on the instructions while there is still time to correct them." (Emphasis in original.) Id., 494.

[7] Although the main question before us in *Bellamy* was whether to overrule *Kitchens*, justices in the majority and concurring opinions noted the uncertainty in the law as to whether a *Kitchens* waiver precludes plain error review, but left that question for another day. See *State* v. *Bellamy*, supra, 323 Conn. 433 n.22; see also, id., 458 n.6 (*Rogers, C. J.*, concurring).

[8] The defendant also argues that, because Connecticut modeled the plain error doctrine codified in Practice Book § 60-5 on the federal plain error rule, federal cases are persuasive in this context. According to the defendant, the rule embraced by the Appellate Court—that trial counsel's acquiescence waives review for plain error—is followed by only a minority of jurisdictions. He explains that most federal courts of appeal refuse to find waiver of instructional plain error on the basis of a defendant's failure to object to a court's proposed jury instruction, or even on the basis of counsel's affirmative statement of no objection to the proposed instruction. Additionally, the defendant relies on the United States Supreme Court decision in *United States* v. *Olano*, 507 U.S. 725, 732–35, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993), for the proposition that a defendant only waives his right to claim plain error when he does so purposefully and freely, and as such, an implied *Kitchens* waiver should not preclude his claim of plain error.

In response, the state claims that *United States* v. *Olano*, supra, 507 U.S. 725, stands for the proposition that if a defendant has intentionally relinquished or abandoned a known right, he is barred from seeking reversal under the plain error doctrine and, as such, because *Kitchens* treats implicit and express waivers in the same manner, a valid, implied *Kitchens* waiver forecloses claims of plain error.

As we explain subsequently, federal case law is inapposite and unpersuasive on the basis of the fundamental differences between the federal and state plain error and waiver doctrines. Specifically, although we acknowledge the federal case law cited by both parties, we find it unpersuasive because of the fundamental differences between federal case law and post-*Kitchens* case law in the context of reviewing unpreserved claims. Under federal law, "an appellate court may, *in its discretion*, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." (Emphasis added; internal quotation marks omitted.) *United States* v. *Marcus*, 560 U.S. 258, 262, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010). By contrast, however, Connecticut's plain error doctrine is a rule of reversibility, mandating reversal when plain error is found. See *State* v. *Sanchez*, 308 Conn. 64, 78–81, 60 A.3d 271 (2013) (overruling previous case law that applied abuse of discretion standard when reviewing Appellate Court's decision whether to reverse judgment under plain error doctrine because plain error review is not discretionary).

Additionally, federal courts do not recognize the concept of implied waiver, in that counsel's acquiescence cannot constitute a waiver. See, e.g., *United States* v. *Ramirez-Castillo*, 748 F.3d 205, 212 (4th Cir. 2014); *United States* v. *Harris*, 695 F.3d 1125, 1130 n.4 (10th Cir. 2012); *United States* v. *Brown*, 352 F.3d 654, 663 and n.8 (2d Cir. 2003); *United States* v. *Dennis*, 271 F.3d 71, 73 (2d Cir. 2001). This is in stark contrast to our implied waiver rule in *Kitchens*, recently reaffirmed in *State* v. *Bellamy*, supra, 323 Conn. 416, 423, 439, in which we held that counsel's acquiescence can in some instances constitute a waiver. Accordingly, because federal courts do not recognize the concept of implied waiver at all, they are inapposite to our post-*Kitchens* waiver case law and the present case.

[9] Because plain error review is fundamentally different from *Golding* review, we are unpersuaded by the state's argument that it would be inconsistent for this court to conclude that a *Kitchens* waiver precludes *Golding* review, but permits claims of plain error.

[10] In its decision in the present case, the Appellate Court extensively relied on *State* v. *Rosado*, supra, 147 Conn. App. 688. See *State* v. *McClain*, supra, 154 Conn. App. 291–93. To the extent that *State* v. *Rosado*, supra, 704, holds that a *Kitchens* waiver precludes claims of plain error, we overrule it.

[11] See footnote 1 of this opinion.

[12] Few instances have arisen before this court in which it was the *defendant* challenging the trial court's failure to give a consciousness of guilt instruction. See, e.g., *State* v. *Shannon*, 212 Conn. 387, 409, 563 A.2d 646 (defendant claimed trial court should have given consciousness of guilt instruction because consciousness of guilt evidence implicated third party), cert. denied,

493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989).

[13] This is in stark contrast to *State* v. *Ruocco*, supra, 322 Conn. 796, a case relied upon by the defendant at oral argument and brought to our attention after briefing pursuant to Practice Book § 67-10 for the proposition that it was plain error for the trial court not to give the consciousness of guilt instruction. We are unpersuaded. Contrary to the present case, in *Ruocco*, the instruction at issue was an adverse inference instruction, which pertained to the defendant's fundamental right not to testify at trial, and the jury's subsequent responsibility not to draw any adverse inference's from the defendant's decision not to testify. Id., 801. Such instructions are *mandatory* pursuant to General Statutes § 54-84 (b), as opposed to consciousness of guilt instructions, which are *discretionary*. Whereas the trial court's failure to give a *mandatory* instruction in *Ruocco* was an obvious error, on its face, satisfying the first prong of the plain error doctrine, the same cannot be true of the present case. Thus, *Ruocco* is inapposite to the present case.

Here, because the decision whether to give the consciousness of guilt instruction is discretionary, it follows that the trial court's decision not to give the instruction was not so obvious an error that it was not debatable, resulting in plain error necessitating reversal. We leave for another day the question of whether a trial court's exercise of its discretion to give that charge ever can amount to plain error—that is, an error so obvious on its face that it is undebatable.

[14] Although the defendant claims that without the pattern instruction, the jury heard an incomplete and inaccurate discussion of the doctrine, we disagree. As noted previously in this opinion, it is within the discretion of the trial court to determine whether to instruct the jury on consciousness of guilt, and given the likely potential benefits to the defendant from the court declining to give this instruction requested by the state, we find this argument to be unavailing.