******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.*
JOSE LUIS RODRIGUEZ
(AC 40837)

Lavine, Moll and Bishop, Js.

*Syllabus*

Convicted of the crimes of public indecency, breach of the peace, improper use of a marker, registration or license, and illegal operation of a motor vehicle while his driver's license was under suspension, and of two counts of the crime of failure to appear in the second degree, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which he allegedly exposed his penis and appeared to be masturbating while at a diner. On appeal, he claimed, inter alia, that the trial court improperly admitted certain evidence of uncharged prior misconduct, which pertained to incidents in which he was arrested but not charged for exposing himself to a waitress at either a diner or restaurant. *Held*:

1. The defendant's claim that the trial court improperly admitted evidence of prior uncharged misconduct was not reviewable, the defendant having failed to preserve the claim by objecting to the court's admission of the uncharged misconduct evidence, and the court did not commit plain error by admitting the uncharged misconduct evidence, as the alleged error was not so obvious that it affected the fairness and integrity of and public confidence in the judicial proceedings.

2. The defendant's claim that he was entitled to plain error reversal because the trial court improperly instructed the jury on the uncharged misconduct evidence was unavailing; the defendant failed to file a request to charge or to object to the court's proposed instructions, and the jury instructions pertaining to the uncharged misconduct evidence did not rise to the level of egregiousness and harm that would warrant reversal under the plain error doctrine, as the uncharged misconduct evidence had been admitted without objection from the defendant and, thus, the court was required to instruct the jury as to how to consider that evidence, and the defendant failed to articulate in what precise respect the jury instructions at issue were flawed and caused harm.

3. The trial court did not abuse its discretion in denying the defendant's motion to sever the failure to appear counts from the other counts in the information; although the conduct for which the defendant was convicted could be perceived as deeply offensive, the crimes involved did not rise to the level of shocking so as to warrant severance, and even if the public indecency and breach of the peace charges shocked or aroused the passions of the jurors, any prejudice that might have resulted was ameliorated by the trial court's curative instructions, and the evidence was overwhelming as to all charges against the defendant.

Argued March 14—officially released August 27, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of public indecency, breach of the peace, improper use of a marker, registration or license, and illegal operation of a motor vehicle while his driver's license was under suspension, and with two counts of failure to appear in the second degree, brought to the Superior Court in the judicial district of Danbury, geographical area number three, where the court, *Russo, J.*, denied the defendant's motion to sever the failure to appear charges; thereafter the matter was tried to a jury; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Conrad Ost Seifert*, assigned counsel, for the appel-

lant (defendant).

*Jennifer F. Miller*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Deborah Mabbett*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Jose Luis Rodriguez, appeals from the judgment of conviction, rendered following a jury trial, of public indecency in violation of General Statutes § 53a-186 (a) (2), breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (5), improper use of a marker, registration, or license in violation of General Statutes § 14-147 (c), illegal operation of a motor vehicle while his driver's license was under suspension in violation of General Statutes § 14-215 (a), and two counts of failure to appear in the second degree in violation of General Statutes § 53a-173 (a) (1). The defendant claims on appeal that the court improperly (1) admitted evidence of uncharged misconduct, (2) instructed the jury on the uncharged misconduct evidence, and (3) denied his motion to sever the public indecency, breach of the peace, and motor vehicle charges from the failure to appear charges. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts beyond a reasonable doubt. At 2 a.m. on September 14, 2006, a waitress at Blue Colony Diner (diner) in Newtown called the police because the defendant had exposed his penis and appeared to be masturbating. When police officers arrived at the diner, the waitress directed them to the table where the defendant was seated. Although the defendant told police that someone named "Steve" dropped him off at the diner, the police found a set of keys on his person that matched an Oldsmobile in the diner parking lot. The police ran the license plate on the Oldsmobile through their database system and discovered that it belonged to a different vehicle and was registered to another individual. The police also learned that the operator's license of the defendant had been suspended indefinitely.

The defendant was charged with public indecency, breach of the peace in the second degree, and motor vehicle violations. He failed to appear on May 2, 2007, and July 17, 2009, and was arrested and charged for both failures.

The public indecency, breach of the peace, and motor vehicle charges were consolidated with the failure to appear charges for trial. The defendant filed a motion to sever the failure to appear charges from the other charges; the motion was heard and denied by the court. Trial commenced on June 6, 2017. The defendant was convicted of all charges and sentenced to a total effective sentence of two years of imprisonment, execution suspended after one year and two days, and three years of probation. The defendant then appealed from the judgment of conviction.

I

The defendant first claims that the court improperly

admitted evidence of three instances in which he was arrested but not charged for exposing himself to a waitress at either a diner or restaurant. The state argues that the defendant did not preserve this evidentiary claim. We agree with the state. Alternatively, the defendant claims that he is entitled to plain error reversal. We disagree.

At trial, the state offered evidence of the defendant's uncharged misconduct pursuant to § 4-5 (c) of the Connecticut Code of Evidence and argued that it was admissible to prove his intent to expose himself for sexual gratification, the lack of mistake or accident, motive, and a common plan or scheme involving a pattern of sexual behavior. The state also offered the uncharged misconduct under § 4-5 (b) of the Connecticut Code of Evidence to show propensity for sexual misconduct. The defendant's counsel did not object; in response to the state's proffer of uncharged misconduct evidence, he stated: "I would have to leave it to the court's discretion, in that regard . . . ."

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush. . . . [A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party. . . . Thus, because the sina qua non of preservation is fair notice to the trial court; see, e.g., *State* v. *Ross*, 269 Conn. 213, 335–36, 849 A.2d 648 (2004) (the essence of the preservation requirement is that *fair notice* be given to the trial court of the party's view of the governing law [emphasis in original]); the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." (Citations omitted; internal

quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753–54, 66 A.3d 869 (2013).

The defendant argues on appeal that his counsel "somewhat ambiguously objected and, inter alia, stated that 'propensity evidence is, extremely, potent evidence.'" Leaving an evidentiary ruling to the court's judgment falls well short of making an objection. So does an observation about the potency of evidence. On the basis of our review of the record, we conclude the defendant did not object to the court's admission of the uncharged misconduct evidence at all, and certainly not with sufficient clarity so as to provide fair notice to the trial court. We therefore decline to review the defendant's claim.

The defendant further argues that even if his claim is unpreserved, he is entitled to plain error reversal on the ground that the uncharged misconduct evidence was not otherwise admissible and the prejudicial impact of the evidence outweighed its probative value. We disagree.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 76–77, 60 A.3d 271 (2013).

The trial court's admission of the uncharged misconduct evidence in this case does not warrant relief under the plain error doctrine because the alleged error is not so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. On the record, the court explained to counsel why it concluded that the uncharged misconduct evidence was admissible[1] and also addressed any possible prejudice by instructing the jury regarding the manner in which it was allowed to consider the evidence.[2] We therefore reject the defendant's claim that the court committed

plain error by admitting the uncharged misconduct evidence.

## II

The defendant claims that he is entitled to plain error reversal for a second reason—that the court improperly instructed the jury on the uncharged misconduct evidence. We disagree.

The defendant concedes that he failed to file a request to charge or object to the court's proposed instructions and acknowledges waiver pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011). The defendant argues, however, that he is nonetheless entitled to plain error reversal pursuant to *State* v. *McClain*, 324 Conn. 802, 815, 155 A.3d 209 (2017). We have reviewed the record and conclude that the defendant is not entitled to plain error reversal because the jury instructions pertaining to the uncharged misconduct evidence do not rise to the level of egregiousness and harm that would warrant reversal under the plain error doctrine. "[An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis omitted; internal quotation marks omitted.) Id., 812. The defendant's apparent claim, that no jury instructions were proper given that the uncharged misconduct evidence ought not to have been admitted, is misguided. The uncharged misconduct evidence was admitted without objection from the defendant, and, accordingly, the court was required to instruct the jury as to how to consider that evidence. Moreover, the defendant fails to articulate in what precise respect the jury instructions at issue were flawed and caused harm. We reject the defendant's claim for plain error reversal.

## III

The defendant's third claim is that the trial court abused its discretion in denying his motion to sever the public indecency, breach of the peace, and motor vehicle charges from the failure to appear charges. We disagree.

"The principles that govern our review of a trial court's ruling on a motion for joinder or a motion for severance are well established. Practice Book § 41-19 provides that, [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. . . . In deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that [joinder] resulted in substantial injustice, and that any resulting prejudice was beyond the curative power

of the court's instructions." (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 543–44, 34 A.3d 370 (2012).

"The court's discretion regarding joinder . . . is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) Id., 545. "[A]lthough a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence . . . where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." (Internal quotation marks omitted.) *State* v. *McKethan*, 184 Conn. App. 187, 198, 194 A.3d 293, cert. denied, 330 Conn. 931, 194 A.3d 779 (2018).

Prior to trial, the defendant filed a motion to sever the public indecency, breach of the peace, and motor vehicle charges from the failure to appear charges. In support of that motion, the defendant argued that if he were to testify as to the failure to appear charges, possible misconduct evidence may be used for impeachment purposes or used substantively with respect to the public indecency charge. Therefore, the defendant asserted that a joinder of the charges would implicate his constitutional right to remain silent.

The trial court addressed the defendant's motion to sever under the three part analysis set forth in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987). The court first determined that the charges against the defendant related to distinct factual scenarios and that the state would be able to present its evidence in an orderly manner. Second, it found that the crimes charged against the defendant were not of a violent, brutal or shocking nature, given that all charges brought against the defendant were misdemeanor charges. Third, it found that the trial would be short and "not terribly complex." The court concluded that all three factors weighed against severance and denied the motion to sever.

The court, however, expressed concern that if the jury learned that the failure to appear charges were associated with the date of trial for the public indecency

and breach of the peace charges, the jury could infer a consciousness of guilt on the part of the defendant. It also was concerned that if the defendant were to testify as to certain charges but not others, the jury may infer an admission of guilt from the defendant's selective silence. The court thus gave curative instructions to the potential jurors prior to jury selection, on April 25, 2017, and before the start of evidence, on June 6, 2017, to address any possible prejudice caused by the consolidation of charges.[3]

On appeal, the defendant argues that "[t]he repulsive and shocking nature of the [public indecency and breach of the peace] crimes prejudiced [his] ability to receive a fair trial on the failure to appear charges." The defendant further argues that he chose to testify as to all charges, even though he wanted to testify only as to the failure to appear charges, because his silence would be damaging in the face of his express denial of the failure to appear charges. The defendant also argues that his right to remain silent was impermissibly burdened; however, he waived this constitutional claim by testifying as to all charges. More specifically, the defendant argues that the court erred in finding that the second *Boscarino* factor—whether the crimes were of a violent nature or concerned brutal or shocking conduct on his part—weighed against severance because his conduct in the diner was shocking. We disagree.

The defendant relies on *State* v. *Payne*, supra, 303 Conn. 538, for the standard of whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part. In *Payne*, our Supreme Court concluded that the defendant's felony murder of a victim was significantly more brutal and shocking than an attempt to tamper with jurors and, therefore, weighed in favor of severance. Id., 552. In reaching that conclusion, our Supreme Court determined that "[w]hether one or more offenses involved brutal or shocking conduct likely to arouse the passions of the jurors must be ascertained by comparing the relative levels of violence used to perpetrate the offenses charged in each information." (Internal quotation marks omitted.) Id., 551.

In the present case, the public indecency and breach of the peace charges are not crimes of violence such as murder. Although the conduct for which the defendant was convicted could certainly be perceived as deeply offensive, none of the crimes rise to the level of "shocking" so as to warrant severance. See id., 551–52 (murder by shooting victim at close range was brutal and shocking as compared to jury tampering where no violence was involved); *State* v. *McKethan*, supra, 184 Conn. App. 197–98 (killing victim in middle of night in isolated location was brutal and shocking as compared to drug and firearm possession case where no violence

was involved); contra *State* v. *LaFleur*, 307 Conn. 115, 160–61, 51 A.3d 1048 (2012) (assault by punching victim in face twenty to thirty times was not so shocking or brutal that another assault by punching victim once in face was compromised by joinder); *State* v. *Jennings*, 216 Conn. 647, 651–52, 659, 583 A.2d 915 (1990) (assault by cutting victim's neck with box cutter and punching, kicking, and throwing victim around parking lot, and assault by cutting victim's finger and arm with knife were not brutal and shocking because "[t]he physical harm that was inflicted on the victim, although serious, was not disabling, and the element of sexual derangement present in *Boscarino* was absent"); *State* v. *Santaniello*, 96 Conn. App. 646, 657, 902 A.2d 1 (charges of sexual assault and attempted murder were not so brutal or shocking that they would inflame passions of jury given that victim was not child and details of crimes were not so brutal and shocking as to "impair the jury's ability to consider the charges set forth in the informations in a fair manner"), cert. denied, 280 Conn. 920, 908 A.2d 545 (2006); *State* v. *Smith*, 88 Conn. App. 275, 279, 869 A.2d 258 (robberies in which defendant threatened use of force by implying that he had firearm were not particularly brutal or shocking), cert. denied, 273 Conn. 940, 875 A.2d 45 (2005). Even if the public indecency and breach of the peace charges shocked or aroused the passions of the jurors, any prejudice that might have resulted was ameliorated by the trial court's curative instructions.[4] Further, the evidence was overwhelming as to all charges against the defendant. We conclude, therefore, that the court did not abuse its discretion by denying the defendant's motion to sever.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On June 6, 2017, the court explained to counsel: "The court has reviewed the state's notice of intent to offer evidence of uncharged misconduct and, specifically, has reviewed the proffer attached to it of three separate incidences, one on May 21, 2006, one on March 9, 2005, and a third on June 17, 2009.

"And . . . the court, after reviewing those documents, arrives at the following ruling, with respect to the state's notice of intent to offer evidence of uncharged misconduct:

"The fact that such evidence tends to prove the commission of other crimes by an accused does not render it inadmissible, if it is otherwise relevant and material. That's from [*State* v. *Figueroa*, 235 Conn. 145, 665 A.2d 63 (1995)].

"Such evidence is admissible for other purposes such as to show intent, an element in the crime, identity, malice, motive or a system of criminal activity.

"Whether evidence of the uncharged misconduct is admissible is two-pronged.

"First, the evidence must be relevant and material to, at least, one of the circumstances encompassed by the exceptions to the rule.

"Second, the probative value of such evidence must outweigh the prejudice or affect of the other crimes evidence, and that's at [*State* v. *Figueroa*, supra, 235 Conn. 162].

"A review of [*State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008)] assists the court, with respect to the relevancy standard for this type of misconduct.

"[*State* v. *DeJesus*] holds as follows:

"Relevancy is established by satisfying the liberal standard, pursuant to which evidence previously was admitted under the common scheme or plan exception.

"Accordingly, evidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged, only if it is one, not too remote in time; two, similar to the offense charged; and three, committed upon persons similar to the prosecuting witness.

"Under the first prong of the court's analysis the evidence of the three other public indecency incidences are relevant to the identity of the person who allegedly performed the public indecency incident, in connection with this trial, as well as the common plan or scheme.

"The first threshold for the use of evidence of other crimes or misconduct, on the issue of identity, is that the methods used are sufficiently unique to more—a reasonable inference that the person who performed one misdeed also did the other, so as to be the handiwork of the accused.

"A comparison of the three crimes sought to be introduced discloses the following similarities to the present crime: one, all three offenses, including this one, which would make it four, occurred at nighttime or early morning hours; in each instan[ce] the venue, including this one, was a diner or restaurant; three, in each instance the . . . indecency began from under a table, including the present case; four, in each instance the event began with a request for a beverage; five, in each instance the indecency was observed, when the waitress returned with a beverage; six, in each instance the waitress was a female; seven, in each instance the waitress was a younger rather than older employee; and, eight, each victim described the person performing the . . . indecent act, as a Hispanic male with similar features to that of the defendant. The same or similar identifiers are so common to one another that they do form a criminal logo, which justifies the inference that the individual who committed the first offense also committed the second and third and so on.

"Under these facts and circumstances this court concludes that the characteristics of the incidences offer[ed] by the state were sufficiently distinctive and unique to be like a signature, and, thus, the defendant's participation in those incidences are highly probative on the issue of the identity of a complainant's offender in this case, as well as the common plan or scheme and, therefore, outweigh any prejudicial effect of its admittance.

"However, the court will issue a . . . limiting instruction before the first witness is presented by the state and the court has gone over that instruction with the parties and the parties are satisfied with the instruction that the court is prepared to give."

[2] The court instructed the jury on June 6, 2017: "Ladies and gentlemen, the state is going to call a witness, who's going to testify to certain acts of . . . misconduct of the defendant. And, now, they're going to be offering that evidence through one, two or three separate witnesses, during this trial and I want to give you now a limiting instruction on how to use that type of evidence.

"That type of evidence is not being admitted to prove the bad character, propensity or criminal tendency of the defendant, it's being admitted solely to show or establish the identity of the person who committed the crime alleged, that the commission of the crimes may have followed a common plan or scheme or a system of criminal activity engaged in, by the defendant. You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity.

"Evidence of a prior offense, on its own, is not sufficient to prove the defendant guilty of the crimes charged in this information.

"Bear in mind, as you consider this evidence that, at all times, the state does have the burden of proving that the defendant committed each of the elements of the offenses charged, in the present case. And, I remind you that the defendant is not on trial for any act, conduct or offense not charged in the present information."

On June 7, 2017, the court gave substantially similar instructions to the jury on two separate occasions.

[3] On April 25, 2017, the court instructed the potential jurors as follows: "[W]hen the state calls witnesses to elicit information, in other words, evidence, to support its allegation that [the defendant] failed to appear in court on two separate dates, those charges ha[ve] absolutely nothing to do with the other four charges alleged by the state, there is no connection whatsoever. You may be sitting there and asking yourself; well, then why are they included in this trial? The answer is; judicial economy. We're going to try them all together, but you must be certain, I can't express in strong enough terms, that the evidence presented to support the state's case for possible failures to appear on [the defendant's] behalf have absolutely noth-

ing to do and no connection with any allegations the state may have made on [the defendant] in count one, in count two, in count three, in count four.

"Therefore, there is the possibility that [the defendant] does not testify on his own behalf in connection with any of the six charges. Likewise, there's the possibility that [the defendant] may elect to testify on his own behalf, only with respect to some of the charges. Or, the possibility also exists that [the defendant] may elect to testify on his own behalf, with respect to all six charges. We don't know what his election will be yet, because the case has not [begun] yet. However, I must caution you; should [the defendant] testify on his own behalf, in connection with some of the charges, but not with respect to all of the charges, you are to draw absolutely no negative inference, but the fact that he's chosen to address and defend himself on some of the charges, but not all of the charges. He has a constitutional right not to testify and that remains with him throughout the entirety of this trial."

On June 6, 2017, the trial court again instructed the jury: "The defendant may or may not testify in this case. An accused person has the option to testify or not to testify at the trial. He is under no obligation to testify. He has a constitutional right not to testify. You must draw no unfavorable inference from the defendant's choice not to testify, if that is his election."

[4] See footnote 3 of this opinion.

--------------------