******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* TAHIR L.*
## (AC 46111)

Cradle, Clark and Seeley, Js.

### *Syllabus*

Convicted, following a jury trial, under two separate dockets, of five counts of sexual assault in the fourth degree and four counts of risk of injury to a child, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his unpreserved claim that his right to due process under the federal constitution was violated by the trial court's preliminary instructions to the jury: by providing instructions that contained the language of the statutes that the defendant was charged with violating, the court properly informed the jury of the nature of the charges in accordance with the model jury instructions pertaining to preliminary instructions; moreover, the court included instructions regarding the state's burden to prove each element of the charges beyond a reasonable doubt, an instruction on reasonable doubt that was consistent with the model jury instruction for preliminary instructions, an explanation of the difference between preliminary instructions and final instructions and an instruction to the jurors that their verdict must be based exclusively on evidence presented at trial and on the principles of law in the court's final instructions; furthermore, because the court's final instructions covered all applicable legal principles, the defendant failed to demonstrate that the claimed errors regarding the trial court's preliminary instructions merited the extraordinary relief afforded under the plain error doctrine.

2. The defendant could not prevail on his claims that the trial court violated his constitutional right to due process in its final instructions to the jury:
   a. The defendant's claim that the court erred in failing to include in its final instructions a limiting instruction regarding the use of nonpropensity evidence for propensity purposes was unavailing: the defendant consented to the joinder of the two underlying cases, and the court properly

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

advised the jury in its final instructions that the jury must deliberate on each count separately and must make an independent determination as to whether the state satisfied its burden of proof as to each element of the charged offenses; moreover, although the court did not specifically instruct the jury that it could not use the evidence pertaining to one information as propensity evidence when considering the offenses charged in the other information, the defendant waived this claim and was not entitled to review under *State* v. *Golding* (213 Conn. 233) because he did not request such an instruction from the court and defense counsel stated that he had no objection to the court's proposed instructions and did not request any additions or modifications to this section of the instructions; furthermore, the defendant failed to demonstrate that the court committed plain error in the absence of his request for such an instruction.

b. The defendant could not prevail on his claim that the court erred in instructing the jury that it could use the victims' affidavits as substantive evidence rather than solely for impeachment purposes: defense counsel explicitly offered the affidavits as full exhibits and did not indicate at trial that the affidavits were introduced only for a limited purpose; moreover, defense counsel raised no objection during the charge conference regarding the language permitting the jury to consider the affidavits as substantive evidence, nor did defense counsel take exception to the language after the court delivered its final instructions, and, accordingly, the defendant waived this claim and therefore was not entitled to *Golding* review; furthermore, it is well established that an exhibit offered and received as a full exhibit is in the case for all purposes and, accordingly, the court did not commit plain error by instructing the jury in the manner that it did.

c. The defendant could not prevail on his claim that the trial court committed plain error in instructing the jury on the elements of fourth degree sexual assault: although the trial court erroneously omitted the word "intentionally" from its instruction on the elements of fourth degree sexual assault as to four of the five counts, the court's final instructions, when read as a whole, did not dilute the state's burden of proving beyond a reasonable doubt that the defendant intentionally subjected the victims to sexual contact with respect to each of the five counts of fourth degree sexual assault and, accordingly, the defendant failed to demonstrate that the court's erroneous instruction resulted in manifest injustice.

3. The defendant could not prevail on his unpreserved claims that the trial court erred in admitting certain evidence at trial:

a. This court could not conclude that the trial court erred in admitting photographs of the victims at their ages when the defendant's abuse began: even assuming, arguendo, that the photographs would have been inadmissible if objected to at trial, the defendant cited no authority for the proposition that the trial court had an affirmative obligation to preclude the admission of certain evidence in the absence of an objection;

moreover, it is well established that when opposing counsel does not object to evidence, it is inappropriate for the trial court to assume the role of advocate and decide that the evidence should be stricken; further-more, the defendant's unpreserved evidentiary claim did not present a truly extraordinary situation in which the alleged error was so obvious that it would affect the fairness and integrity of and public confidence in the judicial proceedings and this court therefore declined to afford the defendant relief under the plain error doctrine.

b. This court declined to review the defendant's unpreserved claim that the trial court erred in admitting a photograph of the defendant's gun safe because it was not relevant and was highly prejudicial; because defense counsel objected to the photograph of the gun safe only on the basis of lack of a proper foundation, the defendant could not now chal-lenge its admission on other grounds.

4. The defendant could not prevail on his claims that various statements by the prosecutor were improper: defense counsel did not take exception at trial to any of the prosecutor's uses of the term "sexual assault," nor did the trial court ever instruct the prosecutor to refrain from using the term, and, given the circumstances of this case, the relatively infrequent use of the term, and the context in which the term was used, the prosecutor's six uses of the term "sexual assault" when questioning the witnesses did not constitute prosecutorial impropriety; moreover, although the defendant claimed that the prosecutor improperly sug-gested that the defendant's abuse caused one of the victim's breast cancer, the prosecutor never claimed a causal relationship between the defendant's abuse and the victim's breast cancer, and the jury could not have reasonably interpreted the prosecutor's remarks as suggestive of such a connection.

Argued May 21—officially released August 27, 2024

*Procedural History*

Substitute information, in the first case, charging the defendant with four counts of the crime of sexual assault in the fourth degree and three counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Litchfield, geographical area number eighteen, and substitute information, in the second case, charging the defendant with one count each of the crimes of sexual assault in the fourth degree and risk of injury to a child, brought to the Superior Court in the judicial district of Danbury, geographical area number three; thereafter, the court, *Pelosi, J.*, granted the state's motion for joinder and the cases

were tried to the jury before *Pelosi, J.*; verdicts and judgments of guilty, from which the defendant appealed to this court. *Affirmed.*

*Allison M. Near*, with whom, on the brief, was *Emily C. Kaas-Mansfield*, for the appellant (defendant).

*Laurie N. Feldman*, assistant state's attorney, with whom, on the brief, were *David R. Shannon*, state's attorney, and *Terri L. Sonneman*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, Tahir L., appeals from the judgments of conviction, rendered following a jury trial, of one count of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2003) § 53a-73a (a) (1), four counts of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2009) § 53a-73a (a) (1), and four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal, the defendant claims that (1) his right to due process was violated by the trial court's preliminary instructions to the jury, (2) his right to due process was violated by the court's final instructions to the jury, (3) the court erred in admitting certain evidence, and (4) the state committed prosecutorial impropriety. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. In 2003, the defendant was living in a house with several brothers, cousins, and other extended family members, including A, the ten year old daughter of one of the defendant's cousins. Around that time, the

---

[1] Although § 53-21 has been amended since the events underlying this appeal; see Public Acts 2007, No. 07-143, § 4; Public Acts 2013, No. 13-297, § 1; Public Acts 2015, No. 15-205, § 11; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

defendant began asking A to accompany him to a bedroom to help him study for an automotive licensing exam. Inside the bedroom, the defendant would touch A's thighs and breasts and eventually progressed to rubbing his erect penis against her body. This abuse continued until 2005, when the defendant got engaged and moved into a new home.

In 2009, B, the twelve year old daughter of another cousin, visited the defendant's house, and the defendant brought B to his basement to help him write estimates for his masonry company. In the basement, the defendant "dry humped" B with an erect penis. On two occasions, the defendant put his hands inside B's pants and caressed her buttocks and again "humped" her with an erect penis. The abuse of B lasted until 2010, at which point she began avoiding visits to the defendant's house, and, if she did go to the defendant's house, she would sit next to her mother or a female relative.

In 2012, L, the ten year old daughter of another of the defendant's cousins, was staying overnight at the defendant's house. That night, the defendant placed L on his lap and rubbed her vaginal area over her pants while "grinding" his erect penis against L's buttocks. The following night, the defendant laid beside L on a mattress topper and began touching her stomach and buttocks. The defendant then removed his clothes and had L lay on top of him while he rubbed his erect penis against the outside of L's clothed vagina.

Around the same time in 2012, the defendant began inappropriately touching E, the twelve year old daughter of another cousin. E was also related to the defendant through her maternal aunt, who was married to the defendant at the time. E would come to the defendant's house to visit her aunt and her cousins, and on several occasions when E stayed the night, the defendant touched her breasts and vaginal area, both over and

under E's clothes. During one sleepover, the defendant placed E's hand under his boxer shorts and on his erect penis. On occasions when the defendant picked E up from school, he made her sit in the passenger seat of the car and rubbed her thighs and breasts as they drove to the defendant's house. The last instance of abuse occurred in approximately 2013, when E was a high school freshman. While E was visiting the defendant's house with her mother, the defendant called E upstairs to help him fix a television. E went upstairs and found the defendant lying in bed. When she refused to get in bed with him, the defendant touched her breasts. E left the room and texted her cousin, B, that there was an "emergency."

The following day, E and B met at a stop sign near E's house, where E disclosed the abuse to B, who then acknowledged that the defendant had abused her as well. At some point, E and B had each discussed the abuse with A as well. Approximately five years later, in July, 2018, E disclosed the defendant's abuse to her uncle, who was also B's father. Around that time, E and B met with L at a Mexican restaurant, where L acknowledged that she, too, had been abused by the defendant. After these disclosures, A's father sought counsel and hired an attorney. By October, 2018, the defendant's then wife had become aware of the allegations, and, in January, 2019, she filed for divorce from the defendant.

In March, 2019, each of the victims completed an affidavit at the attorney's office. The affidavits were then forwarded to the police who subsequently met with the victims, and, following an investigation, the defendant was arrested.

The defendant thereafter was charged with one count of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2003) § 53a-73a (a) (1), four

counts of sexual assault in the fourth degree in violation
of General Statutes (Rev. to 2009) § 53a-73a (a) (1) and
four counts of risk of injury to a child in violation of
§ 53-21 (a) (2).[2] Following trial, the jury found him guilty
on all counts, and the trial court, *Pelosi, J.*, imposed a
total effective sentence of thirty years of incarceration,
execution suspended after fifteen years, and twenty-
five years of probation. This appeal followed. Additional
facts and procedural history will be set forth as neces-
sary.

I

The defendant first claims that his right to due pro-
cess under the federal constitution was violated
because the trial court's preliminary instructions to the
jury were "overly detailed as to the elements of each
charge" such that they were "not tailored to the issues
in the case," and the preliminary instructions did not
define the term "reasonable doubt." We disagree.

The following additional procedural history is rele-
vant to our consideration of the defendant's claim. Prior

---

[2] The defendant was charged in a separate information as to the abuse
of A, which occurred in a different town than the abuse of the other three
victims. Pursuant to Practice Book § 41-19 and General Statutes § 54-57, the
state filed a motion for joinder. The defendant consented to the motion,
and the trial court joined the two cases.

As to the abuse of A, the defendant was charged with sexual assault in
the fourth degree in violation of General Statutes (Rev. to 2003) § 53a-73a
(a) (1) (A) for sexual contact with a victim "under fifteen years of age." As
to each of B, L, and E, the defendant was charged with sexual assault in
the fourth degree for sexual contact with a victim "under thirteen years of
age" when the actor is more than two years older than the victim under
General Statutes (Rev. to 2009) § 53a-73a (a) (1) (A). Additionally, because
the abuse of E extended past the victim's thirteenth birthday, the defendant
was charged with a second count of sexual assault in the fourth degree as
to E in violation of General Statutes (Rev. to 2009) § 53a-73a (a) (1) (B) for
sexual contact with a person "thirteen years of age or older but under fifteen
years of age and the actor is more than three years older than such other
person . . . ." The defendant was charged with one count of risk of injury
to a child in violation of § 53-21 (a) (2) as to each of the four victims.

to the commencement of trial, the court gave preliminary instructions to the jury. In its preliminary instructions addressing the elements of sexual assault in the fourth degree, the court instructed the jury that "sexual contact" means "any contact by the defendant with the intimate parts of the complainant or contact of the intimate parts of the defendant with the complainant." The court further instructed the jury that "sexual contact" as an element of sexual assault in the fourth degree requires the jury to find that "the defendant had the specific intent to obtain sexual gratification or to degrade or humiliate the complainant." See General Statutes § 53a-65 (3). Following the presentation of evidence, the court narrowed its final instructions on sexual assault in the fourth degree to the elements for which there was evidence to support the charge by omitting the phrases "or contact of the intimate parts of the defendant with the complainant" and "or to degrade or humiliate the complainant."

In its preliminary instructions regarding the elements of risk of injury to a child in violation of § 53-21 (a) (2), the court, quoting the statutory language, instructed the jury that the offense covers contact "likely to impair the health or morals of such child." Following the presentation of evidence, the trial court narrowed its final instructions on the elements of the offense by omitting the language regarding the impairment of morals, which was not at issue in the case.

Additionally, the court in its preliminary remarks repeatedly[3] instructed the jury that the state must prove each element of each offense beyond a reasonable doubt, although the court did not provide a definition of "reasonable doubt." The defendant did not take exception to the court's preliminary instructions.

---

[3] The court used the term "reasonable doubt" a total of twenty-four times during its preliminary remarks.

The defendant concedes[4] that his claims as to the court's preliminary instructions were not preserved and, therefore, requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[5] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 239–40. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *In re Na-Ki J.*, 222 Conn. App. 1, 7, 303 A.3d 1206, cert. denied, 348 Conn. 929, 304 A.3d 860 (2023).

---

[4] The defendant claims that the trial court prevented him from challenging the preliminary instructions. We disagree. On the first day of voir dire, the court invited the parties to submit proposed instructions without specification as to preliminary or final instructions. Defense counsel asked the court whether there was a deadline for instructional requests, and the court responded, "No. Let's see how the evidence comes in, and as it's coming in, okay?" The following day, the court stated: "And again, not to be a broken record, any charges—charging documents that you want the court to have, please submit ASAP."

The defendant did not submit proposed preliminary instructions, nor was there an explicit request to do so by the defendant.

[5] "The state does not claim that the defendant waived the challenge to the [court's preliminary instructions] pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011)." *State* v. *Thompson*, 305 Conn. 806, 814 n.11, 48 A.3d 640 (2012); see id., 814 and n.11 (reviewing unpreserved challenge to jury charge pursuant to *Golding* where state did not claim that defendant waived challenge under *Kitchens*).

Here, the record is adequate to review the defendant's claims relating to the court's preliminary instructions. The defendant contends that his claim is constitutional in that the court's instructions violated his due process right to a fair trial. Even assuming, arguendo, that the defendant's claim is constitutional in nature, we conclude that the defendant failed to prove the existence of a constitutional violation and that he was deprived of a fair trial. Resultantly, his claim fails under the third prong of *Golding*.

We are mindful that "[w]hen reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts." (Internal quotation marks omitted.) *State* v. *Bruny*, 342 Conn. 169, 202, 269 A.3d 38 (2022).

"Preliminary instructions to prospective jurors in a criminal case are not mandatory. . . . When preliminary instructions are given, they do not supersede those given after evidence and arguments under our practice." *State* v. *Webb*, 238 Conn. 389, 457, 680 A.2d 147 (1996). "Preliminary instructions serve the important function of orienting the jurors to the nature of the trial to come. It is helpful to explain at the very start the nature and scope of the jury's duty, some of the basic ground rules and the issues to be decided." J. Pellegrino, A Collection of Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) p. 3. Our model jury instructions provide guidance as to what the court's preliminary instructions to the jury should entail, including apprising the jury of the general legal principles in the case and apprising the jury of the nature of the charges against the defendant. When a trial court provides preliminary instructions, as it did here, it must do so without the benefit of seeing the evidence subsequently presented at trial. By providing instructions that contain the language of

the statutes that the defendant was charged with violating, the court properly informed the jury of the nature of the charges, not necessarily the specific manner in which he was alleged to have violated them, in accordance with the model jury instructions pertaining to preliminary instructions.[6]

Here, the court's preliminary instructions on the elements of each offense included instructions regarding the state's burden to prove each element beyond a reasonable doubt, and the court's preliminary instruction on reasonable doubt was consistent with the model jury instruction for preliminary instructions.[7] The court also properly explained the difference between preliminary instructions and final instructions. In its preliminary instructions, the court instructed the jurors that

---

[6] Instruction 1.2-2 of the Connecticut Criminal Jury Instructions provides:

"This is a criminal case. The state has brought charges against *<insert name of defendant>* as follows: *<read information>*.

"The information which I just read is not evidence. It is merely the formal means of accusing a person of a crime and bringing (him/her) to trial. You must not consider it as any evidence of the guilt of the defendant or draw any inference of guilt because the defendant has been arrested and formally charged. Each charge against the defendant is set forth in the information as a separate count, and you must consider each count separately in deciding this case.

"*<Identify each offense charged and summarize the elements.>*" Connecticut Criminal Jury Instructions 1.2-2, available at http://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited August 21, 2024).

[7] Instruction 1.2-3 of the Connecticut Criminal Jury Instructions provides in relevant part:

"Every defendant in a criminal case is presumed to be innocent and this presumption of innocence remains with the defendant throughout the trial unless and until (he/she) is proved guilty beyond a reasonable doubt.

"The burden is on the state to prove the defendant guilty beyond a reasonable doubt, and that burden of proof never shifts throughout the trial. Unless you find at the conclusion of all the evidence that the state has proved beyond a reasonable doubt that the defendant has committed every element of an offense, you must find (him/her) not guilty of that offense. On the other hand, if you are satisfied that the evidence establishes the guilt of the defendant beyond a reasonable doubt, you should not hesitate to find (him/her) guilty. . . ." Connecticut Criminal Jury Instructions 1.2-3, available at http://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited August 21, 2024).

once closing arguments were complete, the court would "instruct you as to the law that you must apply in this case" and that "your verdict must be based exclusively on evidence presented at trial and again on the principles of law given to you in my final instructions."

Moreover, "[i]n determining whether preliminary jury instructions require reversal, we must ask whether the jury was fully and properly instructed at the critical time, after all the evidence and after the arguments of counsel." (Internal quotation marks omitted.) *State* v. *Marra*, 222 Conn. 506, 537, 610 A.2d 1113 (1992). Following the presentation of evidence, the court omitted from its final instructions the three elements that were not at issue in this case[8] and properly defined "reasonable doubt." Accordingly, the defendant has failed to prove that a constitutional violation exists and that it deprived him of a fair trial.

Alternatively, the defendant claims that the court's allegedly erroneous preliminary instructions constituted plain error. In evaluating plain error claims, "we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 373, 33 A.3d 239 (2012). "[T]he plain error doctrine

---

[8] We note that, even if the trial court had included these elements in its final instructions, it would not follow that a clear constitutional violation exists and deprived the defendant of his right to a fair trial. See *State* v. *Clark*, 264 Conn. 723, 736, 826 A.2d 128 (2003) (no constitutional error where final instructions "merely added an additional element that the state was not required to prove"); *State* v. *Vlahos*, 138 Conn. App. 379, 393, 51 A.3d 1173 (2012) (no harm from jury instruction that included extraneous statutory element), cert. denied, 308 Conn. 913, 61 A.3d 1101 (2013); *State* v. *Rosado*, 107 Conn. App. 517, 537, 945 A.2d 1028 (alleged constitutional violation does not clearly exist where trial court's instruction improperly included additional element of intent), cert. denied, 287 Conn. 919, 951 A.2d 571 (2008).

is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017). A party cannot prevail under the plain error doctrine "unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis in original; internal quotation marks omitted.) Id.

Here, the defendant has failed to demonstrate that the court committed any error in its preliminary instructions, never mind one that was so harmful that a failure to reverse the judgments would result in manifest injustice. Moreover, because the court's final instructions covered all applicable legal principles, as we discuss in part II of this opinion, the defendant has failed to show that the claimed errors regarding the trial court's preliminary instructions merit the extraordinary relief under the plain error doctrine. See *State* v. *Alston*, 272 Conn. 432, 450, 862 A.2d 817 (2005) ("[e]ven in cases wherein the preliminary instructions were held to be incomplete and improvidently timed, we have not found reversible error where the final jury instructions were complete and appropriate"). We therefore conclude that the defendant's challenge to the trial court's preliminary instructions is unavailing.

II

Next, the defendant claims that, in its final instructions to the jury, the court violated his constitutional right to due process in (1) failing to give the jury a propensity instruction, (2) instructing the jury that it could consider the victims' affidavits substantively rather than solely for impeachment purposes, and (3)

improperly instructing the jury on the elements of sexual assault in the fourth degree.

The defendant acknowledges that he failed to preserve these claims before the trial court and, therefore, seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. The state claims that the defendant waived these claims. We agree with the state.

"[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011).

"[J]ury instructions [are] implicitly waived under *Golding* . . . [when] the defense expressly acknowledged and agreed by words or conduct to the instruction challenged on appeal." (Footnote omitted.) Id., 475; see also *State* v. *Hampton*, 293 Conn. 435, 447–50, 988 A.2d 167 (2009) (claim of instructional error was waived because defense assented to challenged instruction by expressing satisfaction with instruction, suggesting no changes, and failing to object after court asked counsel for changes); *State* v. *Elias V.*, 168 Conn. App. 321, 337, 147 A.3d 1102 (claim of instructional error was waived because defense counsel participated in charging conference, failed to submit written request to change challenged instruction, and expressed satisfaction with challenged instruction), cert. denied, 323 Conn. 938, 151 A.3d 386 (2016); *State* v. *Collazo*, 115 Conn. App. 752,

758–60, 974 A.2d 729 (2009) (claim of instructional error was waived because defense counsel expressly agreed with challenged instruction at charge conference and failed to object after instruction was given), cert. denied, 294 Conn. 929, 986 A.2d 1057 (2010). The defendant does not contest that the trial court provided him with a copy of proposed jury instructions or that he had a meaningful opportunity to review and to offer comments.[9]

Alternatively, the defendant argues that, even if these claims were waived, each alleged error requires reversal of the judgments under the plain error doctrine. As stated herein, a party may prevail under the plain error doctrine only if "he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis in original; internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 812. With these principles in mind, we address the defendant's three claims in turn. Additional facts and procedural history will be set forth as necessary.

A

We first address the defendant's claim that the court erred in failing to include in its final instructions a limiting instruction regarding the use of nonpropensity evidence for propensity purposes. As noted herein, the defendant consented to the joinder of the information charging the defendant with the abuse of A and the information charging the defendant with the abuse of the other three victims. In the court's final instructions to the jury, it properly advised the jury that it must

---

[9] On Friday, September 30, 2022, the court provided proposed jury instructions to the parties for review ahead of a charging conference scheduled for Monday, October 3, 2022. At the October 3, 2022 charging conference, both parties indicated to the court that they had received the proposed instructions and that they had had enough time to review them. The court proceeded to review the instructions seriatim with the parties.

deliberate on each count separately and must make an independent determination as to whether the state satisfied its burden of proof as to each element of the charged offenses. The court did not, however, specifically instruct the jury that it could not use the evidence pertaining to one information as propensity evidence when considering the offenses charged in the other information. We further note that the defendant did not request such an instruction from the court. In fact, at the charge conference, defense counsel stated that he had no objection to the court's proposed instructions on evidence for a limited purpose and did not request any additions or modifications to this section of the instructions.

"Connecticut courts have found implicit waiver when defense counsel did not object to the challenged instruction for what clearly appeared, on the basis of counsel's trial conduct, to have been tactical reasons." *State* v. *Kitchens*, supra, 299 Conn. 479–80. Here, the defense theory at trial was that the victims' allegations were part of a "corroborated attack" on the defendant orchestrated by his now former wife, who had filed for divorce two months prior to the four victims signing affidavits at the attorney's office. For example, when one victim testified at trial about what another victim had told her in a prior conversation, defense counsel stated that it had no objection to the testimony and that, "[a]s far as I'm concerned, this is them getting together and getting their stories straight before they go to the attorney's office, so." During closing arguments, defense counsel highlighted the similarities in the timing of the disclosure of each victim's allegations, noting that all four victims signed affidavits within days of the others, and at times appeared to encourage the jury to consider the affidavits of each victim in comparison to the affidavits of the other victims.[10] Accordingly, we conclude that

---

[10] For example, defense counsel told the jury: "Take a look at [L's] affidavit. Take a look at [E's]. So [E] created an incident with [L] that [L] doesn't recall."

the defendant waived this claim and, therefore, is not entitled to *Golding* review.

We next turn to the defendant's alternative claim that the court's failure to give a limiting instruction on propensity evidence amounts to plain error. He cursorily asserts that the court's alleged instructional error was obvious and "denying relief would result in manifest injustice." We disagree. "It is well established in Connecticut . . . that the trial court generally is not obliged . . . to give a limiting instruction [sua sponte]." (Internal quotation marks omitted.) *State* v. *Crenshaw*, 313 Conn. 69, 90 n.16, 95 A.3d 1113 (2014). Accordingly, we cannot conclude that the court committed error, much less plain error, by not, sua sponte, providing a limiting instruction on the use of evidence for propensity purposes in the absence of the defendant's request for such an instruction.

B

We next turn to the defendant's claim that the court erred in instructing the jury that it could use the victims' affidavits as substantive evidence rather than solely for impeachment purposes. During trial, defense counsel introduced the affidavits of three of the victims, which were admitted into evidence as full exhibits, wherein the victims each recounted the incidents that occurred between them and the defendant. At trial, defense counsel did not indicate that the affidavits were introduced only for a limited purpose but, in fact, explicitly offered them as full exhibits.[11] The defendant nevertheless

---

[11] During cross-examination of A, the following exchange occurred when defense counsel offered her affidavit into evidence:

"[Defense Counsel]: I'm showing what's defendant's exhibit A for identification, could you tell me what that is?

"[The Witness]: My affidavit.

"[Defense Counsel]: Is that the one that you signed in the Law Offices of Mark Sherman?

"[The Witness]: Correct.

"[Defense Counsel]: Is that the one that was presented to the police?

"[The Witness]: Correct.

claims on appeal that it was evident from defense counsel's questions that they were introduced only for impeachment purposes and not as substantive evidence.

In the court's final instructions to the jury, it provided the following instruction on impeachment: "Evidence has been presented that . . . witnesses may have made statements outside of court that are inconsistent with their trial testimony. You should consider this evidence only as it relates to the credibility of the witness' testimony, not as substantive evidence. In other words, consider such evidence as you would any other evidence of inconsistent conduct in determining the weight to be given to the testimony of the witness in court. . . .

"In evidence as defense exhibits are prior statements of [A], [L] and [E]. To the extent, if at all, you find such statements inconsistent with the witness' trial testimony, you may give such inconsistency the weight to which you feel it is entitled in determining the witness' credibility here in court. You may also use these written statements for the truth of its content and find facts from it."

At the charge conference prior to giving its final instructions, the court reviewed this section on impeachment with the parties. When the court asked the parties, "are we good with that [section]," defense

---

"[Defense Counsel]: Could you go to the second page, is that your signature at the bottom?

"[The Witness]: Yes, it is.

"[Defense Counsel]: Your Honor, [at] this time I'd offer the entire affidavit, it is an affidavit sworn under oath as a full exhibit. I believe, a full affidavit sworn under oath, can come in as a full exhibit. . . .

"[The Court]: All right. We're gonna have it marked full . . . . You want this entered as a full exhibit; correct?

"[Defense Counsel]: I do."

During the subsequent testimony of L and E, defense counsel similarly offered their affidavits into evidence as full exhibits.

counsel responded affirmatively. The prosecutor, however, noted at that time that the court's instruction may cause confusion in that it instructs the jury that it may not use the witnesses' out of court statements as substantive evidence and immediately thereafter instructs the jury that it may consider the witnesses' affidavits as substantive evidence.

The court, in reference to the affidavits, responded: "I mean, [they] did come in for both purposes, that's the whole thing." To clarify the instruction, the court suggested inserting the word "written" before "statements" when referencing which out-of-court statements that the jury may consider as substantive evidence. Both parties affirmatively agreed with the modified language, and defense counsel stated that the change "seems appropriate." The court subsequently incorporated the modification into its final instructions. Defense counsel raised no objection during the charge conference regarding the language permitting the jury to consider the affidavits as substantive evidence, nor did defense counsel take exception to the language after the court delivered its final instructions. Accordingly, the defendant assented to the instruction by expressing satisfaction with the charge and failing to take exception to the challenged language at the charging conference or after the instruction was given. The defendant waived this claim, and, therefore, he is not entitled to *Golding* review.

Alternatively, the defendant claims that it was plain error for the court to instruct the jury that it may use the victims' affidavits as substantive evidence rather than solely for impeachment purposes. It is well established that "[a]n exhibit offered and received as a full exhibit is in the case for all purposes." (Internal quotation marks omitted.) *State* v. *Camacho*, 282 Conn. 328, 377, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). Accordingly, the court

did not commit error, much less plain error, by instructing the jury that it may consider full exhibits, admitted for all purposes, as substantive evidence.

C

We now turn to the defendant's third claim that the court erred in instructing the jury on the elements of sexual assault in the fourth degree. With respect to four of the five counts of sexual assault in the fourth degree, the court instructed that "[t]he first element is that the defendant subjected the complainant . . . to sexual contact." In instructing on these four counts, however, the trial court erroneously quoted the language of a more recent revision of the statute rather than the operative revisions at issue in this case, which each require that the defendant "*intentionally* subject[ed] another person to sexual contact . . . ." (Emphasis added.) General Statutes (Rev. to 2003) § 53a-73a (a) (1); General Statutes (Rev. to 2009) § 53a-73a (a) (1).[12]

In the defendant's reply brief,[13] he concedes that he waived his claim regarding the instruction on the elements of sexual assault in the fourth degree[14] but argues

[12] General Statutes (Rev. to 2003) § 53a-73a provides in relevant part: "(a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

General Statutes (Rev. to 2009) § 53a-73a provides in relevant part: "(a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under thirteen years of age and the actor is more than two years older than such other person . . . ."

[13] Specifically, the defendant concedes that defense counsel's affirmative agreement with the court as to the language of all but two of the charges of sexual assault in the fourth degree fairly waived the objection as to the rest.

[14] At oral argument before this court, when asked about the concession in the reply brief, the defendant's appellate counsel equivocated as to whether she stood by that concession. When asked whether she was withdrawing her concession, she did not give a conclusive response. Even if the defendant had not conceded that he had waived his claim to the court's instruction in this regard, we conclude, for the reasons stated herein, that he has failed to demonstrate that the error deprived him of a fair trial and, therefore, his claim fails under the third prong of *Golding.*

that the court's omission of the word "intentionally" requires reversal of the judgments under the plain error doctrine. The state concedes, and we agree, that the court erred when it omitted the word "intentionally" from its instruction on the elements of sexual assault in the fourth degree. Because we conclude that error exists, whether the defendant can prevail under the plain error doctrine turns on whether the court's error was of "such monumental proportion that [it] threaten[s] to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) *State* v. *Blaine*, 334 Conn. 298, 305, 221 A.3d 798 (2019). As an initial matter, we note that our Supreme Court recently emphasized "that it has been especially rare for a jury instruction to be so clearly improper that our courts have deemed plain error review necessary to correct it." *State* v. *Kyle A.*, 348 Conn. 437, 448, 307 A.3d 249 (2024). Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." (Internal quotation marks omitted.) Id., 451.

As noted herein, "[w]hen reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts." (Internal quotation marks omitted.) *State* v. *Bruny*, supra, 342 Conn. 202. After a thorough review of the record, we cannot conclude that this error resulted in manifest injustice.

In its final instructions, the trial court instructed the jury that the concept of specific intent applies to each of the five counts of sexual assault in the fourth degree. The court then defined specific intent, stating: "Specific intent is the intent to achieve a specific result. A person acts 'intentionally' with respect to a result when his

conscious objective is to cause such result." After providing this definition, the court again instructed the jury that the concept of specific intent applies to each of the five counts of sexual assault in the fourth degree. When the court instructed the jury on the elements for each count of sexual assault in the fourth degree, it stated that, for the second element, it must find that the defendant "had the specific intent to obtain sexual gratification" and reiterated that "[a] person acts 'intentionally' with respect to a result when his conscious objective is to cause such result." Additionally, although the court's instructions on four of the five counts of sexual assault omitted the word "intentionally" when defining the first element of the offense, subjecting another person to sexual contact, the court, prior to reciting the elements for each count, stated: "The statute defining this offense reads in pertinent part as follows: A person is guilty of sexual assault in the fourth degree when such person *intentionally subjects* another person to sexual contact . . . ." (Emphasis added.) Thus, considering the court's charge in its entirety, we conclude that, despite the court's erroneous omission of the word "intentionally," the jury was properly instructed that the state must prove that the defendant's conduct was intentional for each count of sexual assault in the fourth degree.

We therefore conclude that, when read as a whole, the court's final instructions did not dilute the state's burden of proving beyond a reasonable doubt that the defendant intentionally subjected the victims to sexual contact with respect to each of the five counts of sexual assault in the fourth degree. Accordingly, the defendant cannot prevail under the plain error doctrine because he has not demonstrated that the court's erroneous instruction as to the elements of sexual assault in the fourth degree resulted in manifest injustice.[15]

---

[15] In support of this claim, the defendant cites our Supreme Court's decision in *State* v. *Anderson*, 227 Conn. 518, 631 A.2d 1149 (1993), which

### III

Third, the defendant claims that the trial court erred in admitting into evidence (1) photographs of the victims at their ages when the abuse began and (2) a photograph of the defendant's gun safe. We disagree.

### A

The following additional facts are relevant to our consideration of the defendant's claim that the court erred in admitting into evidence photographs of the victims at their ages at the time the abuse began because "they were irrelevant, highly prejudicial and . . . harmful . . . ." The victims were twenty years of age or older when they testified at trial. For each of the nine counts, the state had to prove the victim's age at the time of the abuse.[16] At trial, the state introduced photographs of A and of L when they were ten years old and photographs of B and of E when they were twelve years old. On each occasion, defense counsel

addressed the trial court's erroneous omission of the word "complete" from the phrase "with complete safety" when instructing on the duty to retreat element of the self-defense statute. (Internal quotation marks omitted.) Id., 531–32. In holding that the court's erroneous instruction required reversal of the judgment, the court concluded that the trial court's omission substantively altered the statute's duty to retreat element, which was central to the only contested issue in the case—the defendant's self-defense claim. Id. *Anderson* is inapposite because the court's erroneous instruction did not go to a contested central issue of the present case in that the issue at trial was not whether the defendant acted with intent, but whether the alleged conduct even occurred.

[16] For each of the four counts of risk of injury to a child, the state had to prove that the victim was under sixteen years of age. See General Statutes § 53-21 (a) (2). For four of the counts of sexual assault in the fourth degree under § 53a-73a (a) (1) (A), the state had to either prove that the victim was under fifteen years of age (A); see General Statutes (Rev. to 2003) § 53a-73a (a) (1) (A); or under thirteen years of age (B, L, and E). See General Statutes (Rev. to 2009) § 53a-73a (a) (1) (A). For the second count of sexual assault in the fourth degree as to the abuse of E, the state had to prove that the victim was thirteen years of age or older and less than fifteen years of age. See General Statutes (Rev. to 2009) § 53a-73a (a) (1) (B).

stated that he had no objection to the victim's photograph being admitted as a full exhibit.[17] The defendant concedes that his evidentiary claim regarding the photographs of the victims is not preserved but argues that reversal is appropriate under the plain error doctrine. We disagree.

We cannot conclude that the defendant has demonstrated that the claimed error is both so clear and so harmful that reversal is required under the plain error doctrine. Even assuming, arguendo, that the photographs would have been inadmissible if objected to at trial, the defendant cites no authority for the proposition that the trial court has an affirmative obligation to preclude the admission of certain evidence in the absence of an objection. Moreover, this court consistently has rejected unpreserved evidentiary claims asserting plain error.[18] Indeed, it is well established that,

---

[17] Additionally, at defense counsel's request, once admitted, the photographs of A and B were taken down for the remainder of the witness' testimony after being shown to the jury.

[18] See *In re Miyuki M.*, 202 Conn. App. 851, 857–58, 246 A.3d 1113 (2021) (unpreserved claim that court erred by accepting exhibit into evidence without canvassing opposing party did not warrant relief under plain error doctrine); *State* v. *Rodriguez*, 192 Conn. App. 115, 118–22, 217 A.3d 21 (2019) (unpreserved claim that court erred in admitting uncharged misconduct evidence did not warrant relief under plain error doctrine because alleged error was not so obvious that it affected fairness and integrity of and public confidence in judicial proceedings); *State* v. *Patterson*, 170 Conn. App. 768, 784–86, 156 A.3d 66 (unpreserved claim that state improperly questioned expert witness on cross-examination did not involve alleged error sufficient to warrant relief under plain error doctrine), cert. denied, 325 Conn. 910, 158 A.3d 320 (2017); *State* v. *Natal*, 113 Conn. App. 278, 283–86, 966 A.2d 331 (2009) (unpreserved claim that court erroneously admitted testimony regarding results of defendant's urine tests did not present "the type of extraordinary situation implicating [the plain error] doctrine"); see also *State* v. *Bowman*, 289 Conn. 809, 819–22, 960 A.2d 1027 (2008) (unpreserved claim that court in murder trial erred in admitting eight irrelevant and " 'exceptionally gruesome' " photographs of deceased victim did not result in manifest injustice to defendant and thus precluded relief under plain error doctrine), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014).

"[w]hen opposing counsel does not object to evidence, it is inappropriate for the trial court to assume the role of advocate and decide that the evidence should be stricken. . . . The court cannot determine if counsel has elected not to object to the evidence for strategy reasons." (Internal quotation marks omitted.) *State* v. *Burgos-Torres*, 114 Conn. App. 112, 118, 968 A.2d 476, cert. denied, 293 Conn. 908, 978 A.2d 1111 (2009). Thus, the defendant's unpreserved evidentiary claim does not present a truly extraordinary situation in which the alleged error is so obvious that it would affect the fairness and integrity of and public confidence in the judicial proceedings. We therefore decline to afford the defendant relief under the plain error doctrine.

B

The defendant next claims that the court erred in admitting a photograph of the defendant's gun safe because it was not relevant and was highly prejudicial. The defendant claims that this evidentiary claim is preserved. We disagree and conclude that this claim is not preserved and thus decline to review it.

The following additional facts are relevant to our consideration of the defendant's claim. On the state's redirect examination of E, she stated that the defendant owned guns and a gun safe in response to a question about her fear of the defendant. The state then asked another question specifically about the gun safe. Defense counsel did not object. The state then offered a photograph of the gun safe as a full exhibit, to which defense counsel raised a foundational objection, stating that "[t]he person who took that photograph isn't here." The court overruled the objection but instructed the state to lay a better foundation. After doing so, the state again offered the photograph as a full exhibit, and when the court asked if there was an objection, defense counsel responded, "[i]t's already been overruled, no," and the court admitted the photograph as a full exhibit.

On appeal, the defendant claims that the court erred in admitting the photograph of the gun safe because it was not relevant and was highly prejudicial. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal [ground] raised by the objection of trial counsel. . . . To permit a party to raise a different ground on appeal than [that] raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party." (Internal quotation marks omitted.) *State* v. *Stenner*, 281 Conn. 742, 755, 917 A.2d 28, cert. denied, 552 U.S. 883, 128 S. Ct. 290, 169 L. Ed. 2d 139 (2007). Accordingly, because defense counsel objected to the photograph of the gun safe only on the basis of lack of a proper foundation, the defendant cannot now challenge its admission on the ground that it was not relevant and, therefore, we decline to review this claim.

IV

The defendant finally claims that the state committed prosecutorial impropriety in that it (1) used the term "sexual assault" when examining the victims and (2) suggested that the defendant's abuse of A caused her breast cancer. We disagree.

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Albino*, 312 Conn. 763, 771, 97 A.3d 478 (2014). We look at the circumstances of the case and at the context of the prosecutor's challenged conduct, and "[t]here is . . . no mathematical formula that can be applied ritualistically to [such] claims . . . ." *State* v. *Rodriguez*, 107 Conn. App. 685, 701–702, 946 A.2d 294, cert. denied, 288 Conn. 904, 953 A.2d 650 (2008).

## A

We first address the defendant's challenge to the state's use of the term "sexual assault." On direct examination, A testified that she was "sexually assaulted" by the defendant. The prosecutor then asked A to tell the jury about what she had "described [as] being a sexual assault,"[19] and, in response, A described the specific occasions on which the defendant had sexually assaulted her. Thereafter, the prosecutor asked five questions of A in which she used the term "sexual assault" or a derivative of the term.[20] During the prosecutor's direct examination of E, the court took a brief recess after E became emotional while recounting a particular instance in which the defendant had sexually assaulted her. When E retook the stand, the prosecutor stated, "I'm trying to remember where we were. When the defendant—I'm sorry. I had asked you about what you heard and talked about heavy breathing," before asking E, "Did you hear anything else when the defendant was sexually assaulting you?"

The defendant claims that the prosecutor's six uses of the term "sexual assault" when questioning witnesses was improper because the commission of a sexual assault was an issue for the jury to decide. Even assuming arguendo that a prosecutor's reference to a charged offense may constitute prosecutorial impropriety in some circumstances,[21] we are not convinced that the

---

[19] On appeal, the defendant does not claim that the prosecutor's use of the term "sexual assault" in this particular question was improper.

[20] Specifically, the prosecutor asked A: (1) "So you told your mother, not that the defendant was sexually assaulting you, but that he was a bad person?" (2) "When was the first time you told someone in your family that the defendant sexually assaulted you?" (3) "[H]ow does Albanian culture treat sexual assault?" (4) "When did your parents find out that the defendant had sexually assaulted you?" And (5) "[b]ut there was no sexual assault when [the defendant] was in New Milford?"

[21] The defendant argues that the prosecutor's use of the term "sexual assault" is tantamount to a prosecutor referring to complainants as "victims" when the commission of a crime is at issue. Our Supreme Court has stated that when the commission of a crime is at issue in a case, a court's repeated

prosecutor's use of the term "sexual assault" in six questions during trial was improper.[22] Here, it was A who first used the term "sexual assault." The prosecutor then used the term in five subsequent questions of A, three of which related to A's disclosure regarding her allegation of sexual assault against the defendant, and one of which was how Albanian culture views sexual assault. The prosecutor also used the term when questioning E, but only to help E recall where her testimony had left off prior to the court taking a brief recess. Defense counsel did not take exception at trial to any of the state's uses of the term "sexual assault," nor did the trial court ever instruct the prosecutor to refrain

use of the word "victim" with reference to a complaining witness is inappropriate. See, e.g., *State* v. *Warholic*, 278 Conn. 354, 369, 897 A.2d 569 (2006). This is because the "jury could . . . [draw] only one inference from its repeated use, namely, that the defendant had committed a crime against the complainant." Id. However, "[a] different set of circumstances exists when the person making reference to the complaining witness is the prosecutor." *State* v. *Rodriguez*, 107 Conn. App. 685, 701, 946 A.2d 294, cert. denied, 288 Conn. 904, 953 A.2d 650 (2008). Although our Supreme Court has cautioned the state against making excessive use of terms like "victim" when the commission of a crime is at issue, our courts "repeatedly have concluded that a prosecutor's infrequent use of the term 'victim' does not constitute prosecutorial impropriety." *State* v. *Johnson*, 345 Conn. 174, 217, 283 A.3d 477 (2022).

[22] For example, in *State* v. *Olivero*, 219 Conn. App. 553, 295 A.3d 946, cert. denied, 348 Conn. 910, 303 A.3d 10 (2023), this court found no impropriety in a prosecutor's nine uses of the term "victim" while questioning witnesses; id., 585–86; because the prosecutor's use of the term occurred over three days of evidence, generally occurred after the witnesses first used the term, and the court never instructed the prosecutor not to use the term. Id., 591–94. On the other hand, in *State* v. *Albino*, supra, 312 Conn. 765, our Supreme Court affirmed the judgment of this court, and concluded, inter alia, that, although there were various statements made by the prosecutor that were improper, the defendant was not deprived of a fair trial. This court concluded that prosecutorial impropriety was committed where the commission of a crime was at issue and the prosecutor referred to the complainant as "the victim" approximately twenty-seven times, to the killing as a "murder" approximately twelve times, and to the firearm as the "murder weapon" approximately six times during the evidentiary phase of the trial. *State* v. *Albino*, 130 Conn. App. 745, 766, 24 A.3d 602 (2011), aff'd, 312 Conn. 763, 97 A.3d 478 (2014).

from using the term. Accordingly, given the circumstances of this case, the relatively infrequent use of the term, and the context in which the term was used, we conclude that the prosecutor's six uses of the term "sexual assault" when questioning the witnesses did not constitute prosecutorial impropriety.

B

The defendant next claims that the prosecutor improperly suggested that the defendant's abuse caused A's breast cancer. The following additional facts are relevant to our consideration of the defendant's claim. On direct examination, A, in response to a question about when her parents became aware of the abuse, used her breast cancer diagnosis to recall which year that disclosure occurred. The following colloquy then occurred:

"Q. So let me ask about the breast cancer. You're a young woman of twenty-nine.

"A. Yes.

"Q. Did you talk with your doctors about your breast cancer?

"A. I did."

Defense counsel then objected on relevance grounds, and the state responded that the questions go to an element of risk of injury to a child. The court sustained the objection, and the state did not ask any further questions of A regarding her breast cancer diagnosis, although defense counsel brought the issue up on cross-examination.[23]

Additionally, after the court sustained defense counsel's objection, A gave, without objection from defense

---

[23] Defense counsel asked A: "The therapy, was that after you had breast cancer or before, did you start it?"

counsel, the following testimony in response to a question about therapy during the state's direct examination: "I was seeing [a] therapist because of [the defendant's abuse] in particular; it was causing a lot of issues in my life. I started drinking a lot more than I normally was drinking. I was depressed, I was angry, I was doing things that just like, I wasn't myself. And then on top of that, I got breast cancer a year later, so that just kind of really brought my whole life down. My insecurities, I was super insecure. I felt like I lost my whole womanhood on top of what had already occurred, so it was just a lot to deal with at once and I just needed someone to talk to and she's been great, ever since I started talking to her . . . ."

During closing arguments, the prosecutor told the jury that in order to convict the defendant of risk of injury to a child, it had to find that the defendant's conduct was likely to impair the health of the victim, and then argued: "You heard [A] very candidly tell you as a result of this, things were not going well for her. She was drinking too much, she was depressed, she was angry and then she got breast cancer. There is ample evidence before you, ladies and gentlemen, that in fact the defendant did impair the health of [A]."

The defendant claims that the prosecutor's remarks during direct examination of A and in closing arguments improperly insinuated that the defendant's abuse caused the victim's breast cancer. The state disagrees with this interpretation and contends that the prosecutor's argument was that the defendant's abuse caused heightened trauma for the victim when she was diagnosed with breast cancer, not that it caused the breast cancer itself. We agree with the state. The prosecutor never claimed a causal relationship between the defendant's abuse and the victim's breast cancer, and we conclude that the jury could not have reasonably interpreted the prosecutor's remarks as suggestive of such

a connection. See *State* v. *Felix R.*, 319 Conn. 1, 13, 124 A.3d 871 (2015) ("for the purpose of determining whether a challenged remark is improper, when selecting among multiple, plausible interpretations of the language, this court will assign the remark the less damaging, plausible meaning"). Accordingly, we reject the defendant's argument that the prosecutor improperly suggested to the jury that the defendant's abuse caused A's breast cancer.

The judgments are affirmed.

In this opinion the other judges concurred.